United States District Court
Northern District of Georgia
Rome Division

| | |
|---|---|
| Virtual Studios, Inc., | Case No. 4:12-CV-00077 |
|     Plaintiff, | Jury Demand |
|     v. | |
| Royalty Carpet Mills, Inc., | |
|     Defendant. | |

### Response to Royalty's Motion to Compel

In response to Virtual's Motion for Protective Order, Royalty filed a cross-motion to compel the discovery of confidential settlement agreements Virtual entered with third-parties.[1] Because the issue in that cross-motion is the same that Virtual contemplated in its Motion for Protective Order, Virtual will respond chiefly by relying upon and incorporating by reference its previous brief.[2]

As for the underlying relevance of third-party settlement agreements, the authority Royalty cited in support of its motion

---

[1] Court Doc. Nos. 90 and 93.

[2] Court Doc. No. 86-1.

reveals that this is far from a clear-cut inquiry. In *ResQNet.com, Inc. v. Lansa, Inc,* the Federal Circuit Court of Appeals discussed the "hypothetical license" analysis that can occur when experts opine about damages in patent infringement cases.[3] In that analysis, a court "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began."[4] In essence, this analysis tries to calculate the license value two "willing parties would have" agreed upon "if infringement had not occurred."[5]

In that context, the *ResQNet* court indeed found that "the most reliable license in [the] record [before it] arose out of litigation."[6] But in the same breath, the court noted that this was not a blanket or even generally acceptable rule in patent law:

> On other occasions, this court has acknowledged that the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078–79

---

[3] *ResQNet.com, Inc. v. Lansa, Inc,*. 594 F.3d 860, 870–72 (Fed. Cir. 2010)

[4] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009)

[5] *Id.*

[6] *ResQNet*, 594 F.3d at 872.

(Fed. Cir. 1983) ("[S]ince the offers were made after the infringement had begun and litigation was threatened or probable, their terms should not be considered evidence of an 'established royalty,' since license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation").

Additionally, multiple courts since *ResQNet* have reiterated the irrelevance of litigation-related settlements to patent damages. In *Bascom Global Internet Servs. v. AOL LLC*, for example, a defendant filed a motion to compel the plaintiff to produce a third-party settlement agreement. It did so under the same guise as Royalty—in reliance upon *ResQNet*, and "on the ground that the agreement is relevant to determining what constitutes a reasonable royalty rate."[7]

The *Bascom* court began its analysis by noting that as a general principle of law, "[s]ettlement agreements reached to resolve litigation or threatened litigation are generally not relevant to the issue of what may constitute a reasonable royalty."[8] Such

---

[7] *Bascom Global Internet Servs. v. AOL LLC*, CV 08-1765, 2011 U.S. Dist. LEXIS 100609, *3 (E.D.N.Y. Sept. 8, 2011)

[8] *Id.* at *4–5 (citing precedent from the Federal and Second Circuits, as well as the United States Supreme Court). *See Fenner Invs., Ltd. v. Hewlett-Packard Co.*, NO. 6:08-CV-273, 2010 U.S. Dist. LEXIS 41514, *4 (E.D. Tex. Apr. 28, 2010) (recognizing the "century-old rule that royalties paid to avoid litigation are not a

3

agreements are usually irrelevant because "[l]icense fees negotiated in the face of high litigation costs 'may be strongly influenced by a desire to avoid full litigation.'"[9] Likewise, settlement agreements are ill-suited to "reflect the royalty that the parties would have negotiated" before infringement in "an arms' length transaction," which of course is the crux of the hypothetical license analysis.[10]

The *Bascom* court then distinguished *ResQNet*, noting, among other things, that the admissibility of the settlement agreements was not before the court in that case.[11] Considering the context of the *ResQNet* decision, the *Bascom* court concluded simply that *ResQNet* "does not alter the relevancy of agreements entered into under the threat of litigation."[12] It therefore found

---

reliable indicator of the value of a patent, and should therefore be disregarded when determining reasonable royalty rates").

[9] *Id.* at 5 (citation omitted).

[10] *Id.* (citations omitted) (recognizing further that "[m]any considerations other than the value of the improvements patented may induce the [settlement] payment" during litigation).

[11] *Id.* at *7–8.

[12] *Id.* at *6–7.

that the defendant's reliance upon *ResQNet* was misplaced, and denied the motion to compel.[13]

The scenario in *Bascom* is very similar—albeit in context of patent law—to that now before this Court. Virtual has entered confidential settlement agreements with third-parties in other litigation that Royalty now seeks in discovery on the basis of *ResQNet*. But, just as the *Bascom* court indicated, there are a host of reasons unrelated to license values that went into resolving Virtual's ongoing litigation with third-parties.[14]

Since "[d]istrict courts routinely exclude settlement licenses because the potential prejudice and jury confusion substantially

---

[13] *Id.* at *4, 7–8. *See Fenner Invs., Ltd.*, 2010 U.S. Dist. LEXIS 41514 at *8–9 (noting in a patent-litigation discovery dispute that "the recent *ResQNet* decision has not altered the admissibility of agreements entered into under the threat of litigation," and distinguishing that case based upon the very narrow way in which the *ResQNet* court dealt with settlement agreements and hypothetical royalties).

[14] Royalty indicated in its brief that Virtual has settled three lawsuits—*Hagaman Industries, Inc.*, *Couristan, Inc.*, and *Nourison Industries, Inc*. Court Doc. No. 90 at 4. The attorneys representing Virtual in this case did not represent Virtual in the *Couristan* or *Nourison* suits, nor have they ever seen or been informed about the terms of any settlement agreements related to those cases.

5

outweigh whatever probative value they may have,"[15] this Court should follow suit. Royalty's request of third-party settlement agreements is not reasonably calculated to lead to the discovery of admissible evidence, and should therefore be denied. Likewise, the Court should grant Virtual's Motion for Protective Order.

    Respectfully submitted,

    Patrick, Beard, Schulman & Jacoway, P.C.

    By: /s/ Michael A. Anderson
        Michael A. Anderson, Ga. Bar No. 017740
        Attorneys for Plaintiff
        537 Market Street, Suite 202
        Chattanooga, Tennessee 37402
        Telephone: (423) 756-7117
        Facsimile: (423) 267-5032
        manderson@pbsjlaw.com

---

[15] *Bascom*, 2011 U.S. Dist. LEXIS 100609 at *8 (citing *Fenner Invs., Ltd.*, 2010 U.S. Dist. LEXIS 41514 at *6–7).

## Certificate of Service

I certify that on November 18th, 2013, a copy of this document was filed and served via the Court's ECF system in accordance with the Federal Rules of Civil Procedure. Parties may access this filing through the Court's electronic filing system.

                                Patrick, Beard, Schulman & Jacoway, P.C.

                By:  /s/ Michael A. Anderson

F:\WpDocs\CLG\Clients\Virtual Studios\Royal Carpet Mills, Inc\Pleadings\Resp to Royalty MTC - settlements.doc