United States District Court
Northern District of Georgia
Rome Division

| | |
|---|---|
| Virtual Studios, Inc., | |
| Plaintiff, | Case No. 4:12-cv-00077 |
| v. | Jury Demand |
| Royalty Carpet Mills, Inc., | Judge Murphy |
| Defendant. | |

**Virtual Studios' Motion in Limine to Exclude Settlement Agreements with Third Parties**

### I. Issue

**Third-party settlements** – Courts routinely exclude third-party settlements from reasonable royalty calculations in I.P. cases because they are inherently unreliable, unduly prejudicial and confusing, and prohibited under Fed. R. Evid. 408. Here, even though Virtual does not seek reasonable royalty damages, Royalty wants to admit Virtual's settlements with third parties into evidence to prove a reasonable royalty. Should the Court exclude this evidence from trial?

1

## II. Discussion

### A. Most courts do not allow parties to prove a "reasonable royalty" by using past settlement agreements executed during litigation.

#### 1. If a plaintiff cannot prove actual damages by showing the revenue it lost due to infringement, it may seek to recover a reasonable royalty.

One type of relief Plaintiffs in copyright infringement cases are entitled to seek is actual damages. Because these damages are meant to remedy the harm "suffered by [a plaintiff] as a result of the infringement," they must reflect "a 'causal connection' between the defendant's infringement and an injury to the market value of the plaintiff's copyrighted work . . . ."[1] Actual damages are therefore "often . . . measured by the revenue that the plaintiff lost as a result of the infringement."[2]

---

[1] *Montgomery v. Noga*, 168 F.3d 1282, 1294, (11th Cir. 1999).

[2] *Id.* at 1294 n. 19. *See Telecomm Tech. Servs. v. Siemens Rolm Communs., Inc.*, NO. 1:95-CV-649, 1999 U.S. Dist. LEXIS 21415, *11–12 (N.D. Ga. Aug. 24, 1999) (recognizing that, to recover actual damages, a copyright "plaintiff must show 'with reasonable probability the existence of a causal connection between the infringement of the defendant and some loss of anticipated revenue'").

Sometimes, however, lost revenue can be difficult to discern. So in those cases where "actual damages, e.g., lost profits, cannot be proved,"[3] plaintiffs may seek an alternative form of actual damages called "reasonable royalties."

This "theory [of damages] has, from its inception, been a method to estimate hypothetical royalty amounts in the absence of an established royalty."[4] In other words, a plaintiff that had no applicable payment arrangement with an infringing defendant may use this method to measure its damages on the basis of a hypothetical "legal fiction"[5]—a royalty upon which the "parties would have agreed had they successfully negotiated an agreement just before infringement began."[6]

Since the aim of this exercise is inherently speculative—to arrive at a license agreement "willing parties would have execut-

---

[3] *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1157 (6th Cir. 1978).

[4] *ITT Corp. v. Xylem Group, LLC*, 963 F. Supp. 2d 1309, 2013 U.S. Dist. LEXIS 109381, *49 (N.D. Ga. 2013).

[5] *Panduit Corp.*, 575 F.2d at 1159.

[6] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).

ed . . . if infringement had not occurred"[7]—courts should review a number of specific factors in their analysis. These include, but are not limited to, "what [a] plaintiff's property was, to what extent defendant has taken it, a work's usefulness and commercial value as shown by its advantages over other things and by the extent of its use, and the commercial situation."[8] But in reviewing these factors, courts must still recognize that the "[d]etermination of a reasonable royalty, after [a party chooses to infringe], cannot, without injustice, be treated as though the infringer had elected" to openly negotiate a legal agreement "in the first place."[9]

### 2. The terms of a license agreement negotiated during litigation are usually excluded from the analysis of a reasonable royalty.

For decades, defendants in I.P. litigation have tried to use a plaintiff's settlement agreements with third parties to establish the value of a royalty for damages purposes. But for over one hundred years, courts have been disinclined to allow the use of such evidence. As early as the 19th Century, in fact, the Supreme

---

[7] *Id.*

[8] *Panduit Corp.*, 575 F.2d at 1159.

[9] *Id.*

4

Court of the United States expressed clear qualms with this proof:

> [A] payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented, in determining the damages sustained by the owners of the patent in other cases of infringement. Many considerations other than the value of the improvements patented may induce the payment in such cases. The avoidance of the risk and expense of litigation will always be a potential motive for a settlement.[10]

Subsequent courts did not entirely agree on the breadth or ultimate import of the Supreme Court's statements on this issue.[11] In the context of a reasonable royalty analysis, some courts would focus upon Rule 408's bar against admitting settlement agreements into evidence, while others would emphasize the in-

---

[10] *Rude v. Westcott*, 130 U.S. 152, 22–23 (1889).

[11] Compare *Sunstar, Inc. v. Alberto-Culver Co.*, No. 01 C 0736, 2004 U.S. Dist. LEXIS 16855, *93 (N.D. Ill. Aug. 20, 2004) ("conclud[ing] that the rule stated in *Rude* governs the weight, not the admissibility of such license evidence in a reasonable royalty analysis"), with *Pioneer Corp. v. Samsung SDI Co.*, NO. 2:06-CV-384, 2008 U.S. Dist. LEXIS 107079, *14–15 (E.D. Tex. Oct. 2, 2008) (recognizing that "[n]umerous Courts have relied on the Supreme Court's reasoning in *Rude v. Westcott* and likewise found that license fees negotiated under the threat of litigation are inherently unreliable and properly excludable under Rule 408").

5

herent unreliability and prejudice of the evidence like the *Rude* court. But regardless of their approaches, courts in jurisdictions nationwide have found that litigation-induced settlements generally should not be admitted as evidence of a reasonable royalty:

> The [third-party settlement] was made to resolve ongoing litigation, and is therefore not probative of a reasonable royalty because "in the usual course [such settlements] do not provide an accurate reflection of what a willing licensor would do in an arm's length transaction . . . ." Moreover, any marginal value the . . . settlement terms would have in proving a reasonable royalty is substantially outweighed by the danger of unfair prejudice . . . and the likelihood of confusing the jury and wasting time. The introduction of the . . . settlement terms would necessitate a lengthy explanation to the jury of the economics of litigation risk, competition, and other considerations that inform a litigation settlement. All of this evidence would be collateral, and therefore confusing and a waste of time.[12]

> . . . .

> A royalty, if any, resulting from settlement of an infringement suit between [litigant] and a third party, should not be considered evidence of an "established" royalty and thus a measure of adequate damages here. License fees negotiated in the face of a threat of high litigation costs "may be strongly influenced by a desire to avoid full litigation."[13]

---

[12] *Insight Tech., Inc. v. Surefire LLC*, No. 04-cv-74, 2009 U.S. Dist. LEXIS 97183, *2–4 (D.N.H. Oct. 8, 2009) (ruling that the third-party settlement at issue was inadmissible at trial).

[13] *Panduit Corp.*, 575 F.2d at 1164.

6

> . . . .
>
> Royalties paid under threat of suit or in settlement of claims for past infringement cannot be taken as a standard to measure the value of the patent. "The avoidance of the risk and expense of litigation will always be a potential motive for a settlement."[14]
>
> . . . .
>
> Settlement agreements reached to resolve litigation or threatened litigation are generally not relevant to the issue of what may constitute a reasonable royalty.[15]
>
> . . . .
>
> Rule 408 bars admission of communications during a compromise negotiation to prove validity or invalidity of a claim or its amount. Permitting Defendants to admit [the plaintiff's] licensing offers in an attempt to reduce its damages would be contrary to the purpose and spirit of Rule 408, and would penalize [the plaintiff] for attempting to resolve its dispute out of court. Additionally, evidence of [the plaintiff's] licensing offers during initial attempts to resolve the dispute is "of questionable relevance on the issue of . . . the value of a claim, since settlement may well reflect a desire for peaceful dispute resolution, rather than the litigants' perceptions of the strength or weakness of their relative positions."[16]

---

[14] *Faulkner v. Gibbs*, 199 F.2d 635, 638 (9th Cir. 1952).

[15] *Bascom Global Internet Servs. v. AOL LLC*, No. CV 08-1765, 2011 U.S. Dist. LEXIS 100609, *4 (E.D.N.Y. Sept. 8, 2011) (denying a motion to compel the discovery of settlement agreements).

[16] *Fujitsu Ltd. v. Belkin Int'l, Inc.*, No. 10-CV-03972, 2012 U.S. Dist. LEXIS 164410, *17–18 (N.D. Cal. Nov. 16, 2012) (internal

> . . . .
>
> [T]he court agrees that the settlement agreements with other defendants cannot be admitted to show the amount of the claim against the remaining defendant [in the form of a reasonable royalty]. *See* Fed. R. Evid. 408.[17]
>
> . . . .
>
> [N]egotiations, offers, and agreements reached under the threat of litigation are properly excludable under Rule 408 unless offered for some other non-prohibited purpose . . . . Accordingly, this Court finds that testimony relating to negotiations, offers, and agreements reached under the threat of litigation are properly excludable under Rule 408.[18]

Though courts have made exceptions to this general rule, they have done so narrowly in unique circumstances. For example, in *Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, a court in the Northern District of Iowa allowed the admission of settlement

---

citations omitted) (excluding evidence of settlement negotiations between the parties to prove damages in an I.P. case).

[17] *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 144 (N.D. Iowa 2003) (excluding settlement agreements proffered by a defendant to establish a reasonable royalty).

[18] *Pioneer Corp.*, 2008 U.S. Dist. LEXIS 107079 at *14–15 (excluding from evidence a settlement agreement offered to prove a reasonable royalty).

agreements over a plaintiff's objection because the plaintiff's own expert used them to calculate a reasonable royalty.[19] But if the plaintiff had not waived its objection to this evidence by relying on it through its expert, the court's decision would have been different:

> [The disputed] settlement agreements are not "shotgun wedding" agreements, reached when liability has been determined and the agreement only spares the parties grueling accounting procedures or arguments, but instead are settlement agreements specifically entered into under the threat of litigation or against the backdrop of continuing litigation, with the intention of avoiding the risks and expenses of that litigation. *Were these the only circumstances involved here, then, the court would find the settlement agreements inadmissible under Fed. R. Evid. 408 and the precedents discussed above.*[20]

A court in the Northern District of Illinois recently reached a similar conclusion when a plaintiff's expert considered third-party settlement agreements in calculating a reasonable royalty. Though the plaintiff's motion in limine to exclude those settle-

---

[19] *Century Wrecker Corp. v. E.R. Buske Mfg. Co.*, 898 F. Supp. 1334, 1340–41 (N.D. Iowa 1995).

[20] *Id.* (emphasis added) (referring to the Supreme Court's decision in *Rude v. Westcott* and precedent from the Sixth and Federal Circuits).

ment agreements duly failed, the court found that, absent the plaintiff's waiver, the evidence would have been inadmissible:

> Th[e] determination [of admissibility] would be easy if the question merely involved whether to admit evidence of license agreements contained in [the plaintiff's] settlements with [third parties]. *It is clear that these license agreements would be inadmissible under Fed. R. Evid. 408 and the wealth of cases excluding evidence of settlement agreements offered to establish reasonable royalty rates in the context of patent infringement.*[21]

The exception noted in the *ResQNet.com, Inc. v. Lansa, Inc.* case from the Federal Circuit Court of Appeals is no different. That court indeed found that "the most reliable license in [the] record [before it] arose out of litigation."[22] But in the same breath, the court noted that this was not a blanket or even generally acceptable rule in patent law:

> On other occasions, this court has acknowledged that the hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation. *See Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078–79 (Fed. Cir. 1983) ("[S]ince the offers were made after the

---

[21] *Abbott Labs. v. Sandoz, Inc.*, 743 F. Supp. 2d 762, 767 (N.D. Ill. 2010) (emphasis added).

[22] *ResQNet.com, Inc. v. Lansa, Inc,.* 594 F.3d 860, 872 (Fed. Cir. 2010).

10

infringement had begun and litigation was threatened or probable, their terms should not be considered evidence of an 'established royalty,' since license fees negotiated in the face of a threat of high litigation costs may be strongly influenced by a desire to avoid full litigation").[23]

Likewise, other courts since *ResQNet* have recognized its limited applicability to other cases involving reasonable royalties.[24] Just two years later, in fact, the Federal Circuit Court of Appeals excluded a settlement agreement from evidence to establish a reasonable royalty in a patent infringement case.[25] In so ruling, it noted that it had permitted the use of such settlements only under the "limited circumstances" of *ResQNet*.[26] It still recognized courts' "longstanding disapproval of relying on settle-

---

[23] *Id.*

[24] *Bascom*, 2011 U.S. Dist. LEXIS 100609 at *6–8 (recognizing that *ResQNet* "does not alter the relevancy of agreements entered into under the threat of litigation"); *Apple, Inc. v. Samsung Elecs. Co.*, LTD, No. 11-CV-01846, 2013 U.S. Dist. LEXIS 160337, *52 (N.D. Cal. Nov. 7, 2013) (recognizing that the exception to the general rule in *ResQNet* was "limited" and that the case did not change courts' views of the unreliability of litigation-induced settlements in the reasonable royalty context).

[25] *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012).

[26] *Id.*

11

ment agreements to establish reasonable royalty damages," and refused to part from that position when the unique facts of *ResQNet* were not before it.[27]

### B. The Court should exclude Virtual's settlement agreements because they are irrelevant, unreliable, prejudicial, and inadmissible under Rule 408.

The settlement agreements Virtual executed with third parties during litigation—and any expert calculations based upon those settlements—should be excluded from evidence for at least two reasons. First, they are irrelevant. Virtual may seek actual damages in this case, and it has duly disclosed an expert report that calculates those damages. But this calculation is *not* of a "reasonable royalty." Rather, it follows the traditional measure of actual damages—Virtual's lost revenue based upon its license agreement with Royalty.

Duly, there is no need to consider the legal fiction of the hypothetical reasonable royalty. The jury need not consider what Royalty *might have* paid Virtual before the infringement began, because there are invoices, accounting documents, and testimony in evidence showing what Royalty *actually* paid before the in-

---

[27] *Id.* at 77–78 (noting further that in *ResQNet*, the settlement agreement at issue was "uniquely relevant and reliable")

12

fringement began, and what it was supposed to pay to ensure that infringement never occurred.

Second, the concerns innumerable courts have expressed about reliability, prejudice, and Rule 408 are all applicable in this case. Each of the settlement agreements Royalty wishes to enter into evidence as part of a reasonable royalty discussion were executed in the heat of litigation. They were not negotiated at arms' length during the normal course of business, and their provisions do not contemplate consideration for a voluntary copyright license.[28] Virtual and the third-party defendants were not exchanging money for goods and services—they were simply buying their peace.

To prove otherwise would require the testimony at trial to veer far from the merits of Virtual's claims against Royalty. As multiple courts have noted, the admission of third-party settlements would necessitate numerous "trials within a trial" that are confusing and prejudicial wastes of time:[29]

---

[28] *Abbott Labs.*, 743 F. Supp. 2d at 767 (reasoning that "because many considerations contribute to settlement agreements, such agreements are not very reliable guides for determining the value of a reasonable royalty").

[29] *Id.*

> Admitting evidence of settlement agreements with third parties would "invite a 'mini-trial' on similarities and differences in the facts regarding the 'same' claims against other defendants" to determine the value of the claim in the case at hand. In addition, given the marginal relevance of the settlement agreements, their probative value is outweighed by the danger of unfair prejudice under Rule 403.[30]
>
> . . . .
>
> [A]ny marginal value the . . . settlement terms would have in proving a reasonable royalty is substantially outweighed by the danger of unfair prejudice . . . and the likelihood of confusing the jury and wasting time. The introduction of the . . . settlement terms would necessitate a lengthy explanation to the jury of the economics of litigation risk, competition, and other considerations that inform a litigation settlement. All of this evidence would be collateral, and therefore confusing and a waste of time.[31]

But even if there was some evidence that the settlements were designed to in any way reflect the value of a hypothetical license—which, again, Virtual does not seek as damages—use of the settlements would implicate Fed. R. Evid. 408. Under Rule 408, evidence of and about a settlement agreement is "not admissible . . . to prove or disprove the validity or amount of a disputed

---

[30] *Id.* (internal citations omitted).

[31] *Insight Tech., Inc.*, 2009 U.S. Dist. LEXIS 97183 at *3–4 (internal citations omitted).

claim."[32] And according to the Rule's legislative history, it means exactly what it says: "This rule as reported makes evidence of settlement or attempted settlement of a disputed claim inadmissible when offered as an admission of . . . the amount of liability."[33] The purpose behind the rule is likewise simple—it is meant to "encourage settlements which would be discouraged if such evidence were admissible."[34]

In this case, Royalty wants to do exactly what is prohibited by the Rule—it wants to admit evidence of past settlements to establish the amount of its potential liability. This is plainly in conflict with the Rule's language, and plainly at odds with the Rule's function. Many courts have ruled that Rule 408 usually bars the

---

[32] Fed. R. Evid. 408(a).

[33] Fed. R. Evid 408, Notes of Committee on the Judiciary, Senate Report No. 93-1277. *See id.*, Notes of Advisory Committee on 2006 amendments (stating that the 2006 amendments to the Rule did not change the bar against settlements "offered as evidence of the 'validity,' 'invalidity,' or 'amount' of the disputed claim").

[34] *Id.*

introduction of third-party settlements in I.P. cases,[35] and this Court should do the same.

### III. Conclusion

"District courts routinely exclude settlement licenses because the potential prejudice and jury confusion substantially outweigh whatever probative value they may have,"[36] and this Court should follow suit. Royalty's attempt to present and rely upon third-party settlement agreements to the jury would do far more harm than good. That evidence is not relevant to the damages Virtual seeks, is inherently unreliable, is regularly excluded by district courts, and would necessitate proof of third-party litigation that goes far beyond the scope of this case.

The Court should therefore grant Virtual's Motion in Limine and exclude any evidence or expert reports of, about, or related to

---

[35] *See Pioneer Corp.*, 2008 U.S. Dist. LEXIS 107079 at *14–16; *Fujitsu Ltd.*, 2012 U.S. Dist. LEXIS 164410 at *17–18; *Pioneer Hi-Bred Int'l, Inc.*, 219 F.R.D. at 144; *Century Wrecker Corp.*, 898 F. Supp. at 1340–41; *Abbott Labs.*, 743 F. Supp. 2d at 767 (noting that "admitting [third-party settlement] agreements could chill parties' willingness to engage in settlement negotiations"); *Apple, Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-CV-00630, 2014 U.S. Dist. LEXIS 24506, *33 (N.D. Cal. Feb. 25, 2014).

[36] *Bascom*, 2011 U.S. Dist. LEXIS 100609 at *8.

settlement agreements Virtual entered with third parties in the course of litigation.

      Respectfully submitted by:

      Patrick, Beard, Schulman & Jacoway, P.C.

      By: /s/ Michael A. Anderson
        Michael A. Anderson, Ga. Bar No. 017740
        Attorneys for Plaintiff
        537 Market Street, Suite 202
        Chattanooga, Tennessee 37402
        Telephone: (423) 756-7117
        Facsimile: (423) 267-5032

## Certificate of Service

I certify that on May 12, 2014, a copy of this document was filed and served via the Court's ECF system in accordance with the Federal Rules of Civil Procedure. Parties may access this filing through the Court's electronic filing system.

      Patrick, Beard, Schulman & Jacoway, P.C.

      By:  /s/ Michael A. Anderson

F:\WpDocs\CLG\Clients\Virtual Studios\Royal Carpet Mills, Inc\Pleadings\Motion in limine - settlements.doc